This is an immigration case where the immigration judge denied Mr. Todorov's application for asylum and application for withholding of removal. Mr. Todorov came from Bulgaria where he suffered persecution because he was beaten. While he was in the Bulgarian army, he refused to be a communist spy. He was forced to join the Communist Party and also because he provided assistance to ethnic Turkish soldiers. The issue before this court is as follows. First, whether immigration judge's adverse credibility finding is supported by substantial evidence when there is corroborating evidence to support Mr. Todorov's claim. The problem with your case is, as the IJ says, this is a remarkable case. The respondent admits he intentionally put false information in his claims in order to enhance his probabilities of getting asylum. And he admits that. No, Your Honor. Actually, Mr. Todorov hired one person who is not an attorney, submitted his application for asylum. In that form, he provided a statement which was prepared by that person. And Mr. Todorov did not read the statement. He did not agree with the statements? At the time when he submitted it, no. And then he realized sometime just before the interview before an asylum officer, he talked with that person. That person explained to him what was in his statement. The statement said he was a protestant. Actually, he was not. So he said that was not true. That person told him that's okay. So he went to the interview with the asylum officer and he did not have a chance to retract that statement because the asylum officer did not ask him the questions about his religious belief. So he didn't have an opportunity to retract it? He knew it was false. He's with the asylum officer. Did he tell the asylum officer I put false information in my claim? No, he didn't. But the asylum officer did not ask him either. Well, he's the one that put forward the information. You say it's incumbent on the asylum officer to ask him about information that he knows is false? That's right. He didn't come forward. So if you put false information in a claim and you stay silent, no problem? Well, then he should explain that. I think his explanation here is convincing because his claim actually was not based on religion. His claim was based on political opinion. And also, the application was not submitted prepared by himself. It was prepared by somebody else. But he knew that it was false when it was prepared. Yeah, he knew it just before going to the interview. And then he retracted it before the hearing, before the immigration judge. I pointed out to him that the fact that he wrote down regarding my religion are not true. He told me that it's better if you leave things the way they are because this gives more force, more weight to my declaration. I talked with some people who knew him and they told me he'd helped many people. That's the reason I left things the way they were in his declaration. So his own testimony says, I made it, I knew this was false. I made a decision to leave it false. Is that right? That's right at that moment, Your Honor. And isn't that what torpedoed him? I think that would put his credibility in question, Your Honor. But when somebody's credibility is in question in a silent application, then this person should be given a chance to show up his statement by corroborating evidence. And in this case, we have corroborating evidence. There are two people testified on his behalf. One was a fellow officer in Bulgaria Army, and he testified. Mr. Todorov was involved with a free radio station activity that was consistent with what Mr. Todorov was saying. And also there was a professor, Mr. Brooks, testified that during the 80s in Bulgaria, if you were against the party's policy, you could suffer brutal punishment. So those statements are consistent with what he is claiming based on his political opinion. So my point is that the immigration judge should consider maybe his credibility is in question. However, let's consider the total evidence to see whether his statements, his testimony are credible or not. And as a matter of fact, it's interesting in this case the facts are true. And if that is true under this court teaching, then his statement should be accepted as true. Then the next question is if those facts are true, whether he is eligible for asylum or for withholding from removal. So even if I agree he got a problem there, but we should consider the fact it was submitted by a non-lawyer. And also there is a case in this court called Garo Vilas v. INS in which the applicant suffered the persecution like this. The statement said my foot was shot. But at the time before the immigration judge, his testimony was I never got my foot shot. So there was a description there. And he explained that I did not know my attorney included that information. And this court said, well, that's good explanation because his statement, his testimony before immigration judge actually lessened his claim. And therefore he is believable. So it's very similar in this case where he said before I was a by doing that, he actually lessened his claim. Thank you, counsel. We'll hear from the other side. Good morning, Your Honors. Leslie McKay for the respondent, John Ashcroft. Just to address a couple of points that the petitioner brought up regarding the credibility of the alien in this case. Garo Vilas, the case that he relies on is distinguishable from this matter insofar as in Garo Vilas, the alien Garo Vilas had clean hands. It was somebody else. Exactly. There was no culpable conduct. And in this case, the record clearly reflects culpable conduct on the part of the alien. He testified before the immigration judge. He knew the importance of telling the truth. And he knew that the statements in his asylum application were false. His claim that because the asylum officer didn't directly ask him about that, he somehow had no obligation to come clean. But the adverse credibility finding on that wasn't the end of the case. It appears to me that the ILJ said, OK, we'll look at the other information you have. We might look with a jaundiced eye. We'll see if you have any corroboration. And he found that that fell short. Exactly. Exactly. And substantial evidence supports the immigration judge's decision in that regard. What he did was simply say to the alien, because you admitted that you lied on your asylum application, I'm not going to draw inferences as to the motive or the nexus between your past harm and a protected ground under the INA. I'm not going to draw any inferences from your testimony. I'm going to look to the record. I'm going to look to your corroborating witnesses for evidence of nexus. And in this case, it's just not clear that there was any nexus. Most of the phone calls that he received were anonymous. The content of the calls was linked to him withdrawing an application to recover some of his family's land, to him quitting his particular employment at that time, whether it be with the radio station or the newspaper. He also testified that other employees at his places of business received similar phone calls, were similarly threatened, were similarly harmed. And there's just no clear indication in this record of any reason related to one of the five grounds under the act that they were targeting this alien. And in that regard, I think it's important to look to the testimony of Professor Brooks, particularly at pages 105 through 107 of the record, where he explains that, yes, there is some link between these wrestlers or these insurance agents and the former communist government in Bulgaria, but that essentially what you have is people formerly in positions of power. At the time of the democratic revolution, they took advantage of those powerful positions to obtain land or economic interests, businesses for themselves, and that they then used these sort of heavy men, these wrestlers, to protect their economic interests and to maintain their control. So they became lawyers. Well. That's pretty much what he says. All they knew was wrestling. That's the only thing they understood, and the only way that that translated into anything else was to become lawyers. They don't have any education, any background. Well, I suppose that's what interpretation you're offering. Well, what I hear you arguing is that even if the alien had been found credible, he doesn't present a case of persecution for the enumerated reasons in the statute. Is that what you're arguing now? Absolutely, Your Honor. Now, to the extent that the other witness testified, he did, to the degree to which he testified, corroborate the alien, however, did he not? It corroborated his activities. It didn't directly corroborate motive, particularly the alien's friend corroborated that he had a radio show, but there's no clear indication of the content, and there's also no clear indication that he was targeted because of that content. Now, as I read what the I.J. said, it sounded like the decision to deny was almost punitive, saying you committed what amounted to a deliberate effort to mislead, and therefore you lose this case. I disagree, Your Honor. I don't believe that it was punitive. I think the immigration judge was reasonably and understandably frustrated with the facts of this case and with the alien's willingness both to lie on the application and then to sort of try to explain it away and say, well, because I came clean before you, now you should believe everything I say. The immigration judge in this case didn't just stop with credibility. He moved past credibility and went to a burden of proof analysis, which is he could have stopped with credibility on these facts, and he didn't. He went beyond that and looked at the totality of the evidence in the record and came to his conclusion. Are you saying that the immigration judge assumed for purposes of decision that Mr. Totoroff was credible? No, Your Honor. He clearly did not. My understanding of the immigration judge's decision is that he simply declined to draw inferences from the alien's testimony. I think that there was really no question in the immigration judge's mind that the events that the alien testified to occurred. He simply did not give the alien the benefit of the doubt in terms of agreeing that when the alien says, I was targeted because of my political opinion, that the immigration judge, without any other evidence, would just accept that as true. You spoke of the immigration judge as feeling frustrated. I take it you have in mind his concern that Mr. Totoroff had acknowledged that a falsehood appeared in the original documentation and that that bore on his credibility. But the immigration judge didn't at any point, did he make a finding? If he did, I don't recall it. Did he make a finding that Mr. Totoroff's explanation of why that falsehood appeared was itself a false explanation? Your Honor, there was considerable discussion in the record, and I believe it's at pages 138 to 146, between the false statement and later recanted, and I think ultimately the immigration judge's conclusion was that had the alien gone before the asylum officer and been successful, there would have been no reason for him to recant his testimony. I'm sorry, his false statement. He only recanted and only came clean at the point at which the asylum application was referred to the immigration judge and there would be an evidentiary hearing. And I think that was the conclusion that the immigration judge came to based on the explanation. He focused on the fact that the alien knew that the statement was false and went forward anyway because he wanted his asylum application to be granted. But back to the proposition that I see in this, and I want you to talk about it, is that here the immigration judge is saying, now I have before me a witness who, before he came into the hearing, before the IJ, has tried to come clean. But for the alien's statement that the matter in his application was false, there was really no way of knowing that, except that the alien told the decision maker. Now if he had done that before he went before the officer, this case would have an altogether different posture. Altogether different. It's only because that falsehood survived that encounter with the officer that this case is at all of concern. For all that appears in the record before the IJ himself, this man was coming clean. Now that's why I kind of use the term punitive. And I understand your argument that if he had been granted relief, maybe there would have been no need to come clean. And he could have been granted relief on that falsehood, because he not only said he was a Christian, an evangelical Christian, or whatever he said, but he embellished it with some details about having been persecuted for those reasons. Now, your argument still is that the action of the IJ is not at all punitive. That is correct, Your Honor. I think it would be more appropriate to characterize it as punitive if the immigration judge had simply stopped at credibility and said, I find you not credible, based on the fact that you included this false statement knowingly. If he had stopped there, I might agree with your characterization. Because he said, look, you interwove false and truth in your application, and I don't know what to believe. I'm moving on now to burden of proof and to your corroborating evidence, and considered all of the testimony and all of the evidence in the record, and came to his conclusion, I don't agree that the immigration judge was acting punitively. He does say this does still mean that his credibility is impeached today. It is impeached in a very significant way. This does not mean that this is the end of the court's analysis, because he does have corroboration with his witness, Mr. Atanasoff. So then he goes through what that corroboration establishes, and then he ends up by saying, I conclude he hasn't met his burdens. That sums up what your point is. That's correct, Your Honor. Thank you, counsel. Thank you. You may respond. I think the immigration judge's decision is kind of confusing, because he confused about credibility decision and eligibility decision. Just as that paragraph you just cited, he said his credibility is an issue, but he has corroborating evidence. Therefore, I will continue to decide whether he is eligible for asylum. But the legal standard is at that moment he should say, well, his credibility is in question, but there is corroborating evidence. I have to use questionable evidence to weigh together with corroborating evidence to see whether I have to make an adverse credibility finding. If so, if I make a decision he is not credible, that's end of discussion. But he does not do that. So right now we don't know what his decision is, whether he made adverse. You mean the problem here is he should have stopped the case right then and there? He should say, I find this applicant not credible, therefore his asylum application is denied. He didn't do that. He gave your client some benefit. He said, even though I find a credibility problem, I'm going to go on and look at the rest of the evidence. But the problem is this court. No, this court says if the immigration judge does not make adverse, explicit adverse credibility finding, then everything the applicant says should be accepted as true. If that is so, what he says, his suffering, his beating, because he refused to join Communist Party, because this should be considered as to make decision whether he is eligible for asylum. The IJ found that his conduct in allowing his statement to stand throughout the proceeding before the officer was willful. Now, what you're saying is that the IJ should have somehow granted him relief, even though there's prima facie case of the felony crime of lying in the process of achieving. That's this case, is it not? Well, I disagree, and the fact was that he did not know when he submitted the evidence. The only problem he had is whether he retracted in time, and that put his credibility in question. He let this falsehood survive through the process of decision making by the government that he seeks relief from. He had an agent of a government before him with an absolute falsehood in front of that agent of the government, and he's asking for relief from that government to which he is lying. Now, that's this case, isn't it? Well, actually, his claim was not based on that piece of false information. I know he failed, but he presented that falsehood to the decision maker, and he would have been the beneficiary of the decision in his favor had an agent of the United States bought into his falsehood. True? No, Your Honor, because he did not ask him for asylum based on his religious belief. Thank you. Thank you, counsel. The case has been ordered and submitted. We'll call Farrah v. Ashcroft.
judges: Leavy, Trott, Pollak